UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| VICTOR MORONES-RAMIREZ,<br><br>Petitioner,<br><br>v.<br><br>SAMUEL OLSON, Interim Director of United States Immigration and Customs Enforcement Chicago Field Office; KRISTI NOEM, Secretary of the United States Department of Homeland Security; PAMELA BONDI, Attorney General of the United States; TODD LYONS, Acting Director of United States Immigration and Customs Enforcement; and BRIAN ENGLISH, Warden of Miami Correctional Facility;<br><br>Respondents. | CAUSE NO. 3:26cv92 DRL-SJF |

OPINION AND ORDER

Immigration detainee Victor Morones-Ramirez filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241, alleging he is unlawfully confined in violation of the laws or Constitution of the United States. Today the court affords the government its statutory election—either to release Mr. Morones-Ramirez or to conduct a custody redetermination (with or without a hearing) before an immigration judge in accordance with 8 U.S.C. § 1226(a), and only orders a conditional release to the extent the government chooses not to proceed with this custody redetermination.

The parties agree that Mr. Morones-Ramirez entered the United States without inspection and has been living here since at least 2015. He was arrested by United States

Immigration and Customs Enforcement (ICE) agents on October 16, 2025, in Addison, Illinois, and is currently being held at Miami Correctional Facility pending the conclusion of removal proceedings.[1]

After Mr. Morones-Ramirez's detention by ICE agents, he sought a custody redetermination by the Executive Office for Immigration Review (EOIR). On January 9, 2026, an immigration judge denied his request, citing *In re Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025), and concluding that he was statutorily ineligible for bond pursuant to 28 U.S.C. § 1225(b)(2). On January 23, 2026, in lieu of any further administrative review based on what was likely futile, he filed the present petition. He argues that the mandatory detention provision in 8 U.S.C. § 1225(b)(2) does not apply to him because he entered the United States years ago and was residing in Illinois at the time he was apprehended. He argues that there is no statutory authority for the government to detain him, and that his detention also violates Fifth Amendment due process. He asks the court to order that he be released or alternatively provided a bond hearing.

In an order to show cause, the court directed the respondents to answer the petition in light of *De Jesús Aguilar v. English*, No. 3:25cv898 DRL-SJF, 2025 WL 3280219, 8 (N.D. Ind. Nov. 25, 2025), which joined a large majority of other courts in concluding that § 1225(b)(2) does not apply to noncitizens when they are not "seeking admission" within the statute's meaning. *See also Singh v. English*, No. 3:25cv962, 2025 WL 3713715, 5 (N.D. Ind. Dec. 23,

---

[1] Mr. Morones-Ramirez asserts that he has two minor children who were born in the United States and rely on him for support. An immigration judge denied his request for cancellation of removal in late January 2026, but he says he intends to appeal to the Board of Immigration Appeals before the 30-day window closes.

2025) ("In short, under § 1225(b)(2), an alien must be an 'applicant for admission,' and the alien must be 'seeking admission,' and an examining immigration officer must determine that this alien 'is not clearly and beyond a doubt entitled to be admitted' for mandatory detention to occur under this subsection."). The respondent—really just his current custodian by law because the others are named unnecessarily—was instructed to address why this case differs from *Aguilar*, why the court should examine subject matter jurisdiction differently, and whether there is cause to address the outcome differently. That response has been filed, as has Mr. Morones-Ramirez's reply.

As a preliminary matter, Mr. Morones-Ramirez was ordered to show cause why every respondent but the Miami Correctional Facility Warden, the only respondent who exercises "day-to-day control" over him, should not be dismissed under *Kholyavskiy v. Achim*, 443 F.3d 946, 952 (7th Cir. 2006). Relying on *Rumsfeld v. Padilla*, 542 U.S. 426 (2004), the court of appeals concluded the proper respondent in an immigration habeas case challenging the constitutionality of a petitioner's confinement is the warden of the facility where the petitioner is being held, not a supervisory official who has the authority to free the petitioner. *See also Doe v. Garland*, 109 F.4th 1188, 1192 (9th Cir. 2024); *Anariba v. Dir. Hudson Cnty. Corr. Ctr.*, 17 F.4th 434, 444 (3rd Cir. 2021). He argues that all respondents should remain in the case in accordance with the decision in *Roman v. Ashcroft,* 340 F.3d 314 (6th Cir. 2003).[2] However, this court must follow this circuit's law, which aware of *Roman*

---

[2] Mr. Morones-Ramirez also argues that this issue has been "waived" by the government. However, the court raised the issue in the show cause order, requiring Mr. Morones-Ramirez to explain why all of the parties he named were proper respondents under governing case law. The court did not invite or require the government to address the issue. In these circumstances, it would be inappropriate to find an "intentional relinquishment" of rights by the government based on the mere

3

expressly declined to follow it. *See Kholyavskiy*, 443 F.3d at 950. Furthermore, *Roman* predates the Supreme Court's decision in *Padilla*. Therefore, these additional parties will be dismissed. For clarity, the court refers to the responding party as the Warden from this point forward.

The Warden (through his federal counsel) repeats his arguments from *Aguilar* and other recent cases that the court lacks jurisdiction over the petition and that Mr. Morones-Ramirez's detention is warranted by § 1225(b)(2) because he is "seeking admission" within the meaning of this statute. These arguments were rejected in *Aguliar* and *Singh*, and in other subsequent decisions in this district, though *Aguilar* has been appealed. *See also Mejia Diaz v. Noem*, No. 3:25cv960, 2025 WL 3640419 (N.D. Ind. Dec. 16, 2025) (Brisco, J.). The court continues to be of the view that jurisdiction is secure insofar as this opinion goes, and that § 1225(b)(2) cannot reasonably be interpreted in the manner urged by the government.

Notably, the court of appeals recently held in deciding a motion for a stay pending appeal that the government was not likely to succeed on the merits of its argument that the mandatory detention provision contained in § 1225(b)(2) applies to individuals who are arrested in the interior of the United States. *See Castañon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1061 (7th Cir. 2025). Though preliminary, that opinion offers early echoes of what this court has done. The court also read the split decision in *Buenrostro-Mendez v. Bondi*, 2026 WL 323330 (5th Cir. Feb. 6, 2026). This opinion, together with others, illustrates just

---

fact that it omitted mention of this issue in its brief. *See United States v. Flores*, 929 F.3d 443, 450 (7th Cir. 2019).

how complicated this patchwork of statutes is, but the court remains persuaded in its current course under *Aguilar* and *Singh* until guidance comes from this circuit.

The question remains whether there is anything unique here that would warrant a different conclusion than that reached in both *Aguilar* and *Singh*. The court can find no such reason. Though Mr. Morones-Ramirez may be an "applicant for admission" within the meaning of § 1225(b)(2), he cannot be said to be "seeking admission" for the same reasons the court articulated in both *Aguilar* and *Singh*.

That leads the court to 8 U.S.C. § 1226(a), the "default rule" for detention of noncitizens who are "already present in the United States." *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018). "On a warrant issued by the Attorney General, an alien may be arrested and detained" while removal proceedings are pending, and the Attorney General "(1) may continue to detain the arrested alien; and (2) may release the alien on (A) bond . . . or (B) conditional parole" until removal proceedings conclude. 8 U.S.C. § 1226(a). The court, as it always does, begins with the plain language of this statute. It is permissive, not mandatory, and it affords an election (insofar as the limitations in § 1226(c) do not apply of course).

Immigration officials issued a warrant for Mr. Morones-Ramirez's arrest [ECF 1-1 at 20]. He pauses to make a rather confusing argument in reply that the Warden concedes there was no warrant for his arrest, but Mr. Morones-Ramirez produced the warrant with his petition. He also complains that the warrant is "handwritten," suggesting some type of impropriety, but officials used the "Form I-200, Warrant of Arrest" as specified in 8 C.F.R. § 236.1 and the form is dated the day of his arrest—October 16, 2025. Although the name and date are filled in by hand, there is nothing inherently unusual about the warrant. No

law requires these to be typewritten. His mere supposition that there was some impropriety is insufficient to undercut the presumption of regularity that attaches to this document. *See United States v. Zuniga*, 767 F.3d 712, 720 (7th Cir. 2014); *Butler v. Principi*, 244 F.3d 1337, 1340 (Fed. Cir. 2001); *see also Varela Martinez v. Warden*, No. 3:25cv1057, 2026 WL 322742, 3 (N.D. Ind. Feb. 6, 2026) (Leichty, J.).

By statute, a noncitizen detained pursuant to a warrant may be released by the Attorney General (subject to certain statutory limitations that no one argues apply here), or he may be detained pending a decision on whether he will be removed from the United States. *See* 8 U.S.C. §§ 1226(a), (c). Our high court likewise has recognized the permissive nature of this language. *See Johnson v. Guzman Chavez*, 594 U.S. 523, 526-27 (2021); *Jennings*, 583 U.S. at 306.

The Attorney General has delegated her discretion by regulation—first, to specified immigration officers who may "release an alien not described in [§ 1226(c)(1) (regarding criminal aliens)], under [bond or conditional parole]; provided that the alien must demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding." 8 C.F.R. §§ 236.1(c)(8), 1236.1(c)(8). That is called an initial custody determination. After that initial custody determination, a noncitizen may apply to an immigration judge for a custody redetermination, and the immigration judge is authorized to exercise the authority in § 1226 "to detain the alien in custody, release the alien, and determine the amount of bond, if any, under which the respondent may be released." 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1); *see also* 8 C.F.R. § 1003.19 (detailing procedures for custody or bond redeterminations by an

6

immigration judge). When a noncitizen files this motion, an immigration judge, under immigration court rules, must "in general" schedule a "hearing for the earliest possible date," though in "limited circumstances" the immigration judge may rule on a bond redetermination request without a hearing. Immig. Ct. Practice Manual § 9.3(d). A noncitizen may appeal a decision relating to bond and custody determinations to the Board of Immigration Appeals. 8 C.F.R. §§ 236.1(d)(3), 1236.1(d)(3).

Both noncitizens and the government alike must comply with immigration laws as they are written and as they must work within the demands of constitutional due process. *See, e.g., Zadvydas v. Davis*, 533 U.S. 678, 701 (2001); *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954). The government has predetermined the procedures that apply to noncitizens who are arrested and detained under § 1226, and due process requires merely that these procedures be fairly given, not taken away. *See Accardi*, 347 U.S. at 266-68; *see, e.g., Jideonwo v. I.N.S.*, 224 F.3d 692, 697 (7th Cir. 2000); *Montilla v. I.N.S.*, 926 F.2d 162, 166 (2d Cir. 1991). Mr. Morones-Ramirez gives no reason to believe that this process is undue or otherwise insufficient. The court will order no more and no less than what is expected of immigration officials by law. *See Accardi*, 347 U.S. at 268; *see also United States v. Nixon*, 418 U.S. 683, 696 (1974) ("So long as this regulation [delegating Attorney General's discretion to a Special Prosecutor] remains in force the Executive Branch is bound by it, and indeed the United States as the sovereign composed of the three branches is bound to respect and to enforce it.").

Mr. Morones-Ramirez filed a motion for a custody redetermination, else the court would leave him to that task. He was denied a custody redetermination because the

7

immigration judge found that he was statutorily ineligible for bond under § 1225(b)(2). The good judge was following BIA guidance, but erroneous guidance as it turns out. Although Mr. Morones-Ramirez presses for outright release, that exceeds what would be a reasonable remedy on this record. After all, "Congress may make rules as to [noncitizens] that would be unacceptable if applied to citizens." *Demore v. Kim*, 538 U.S. 510, 522 (2003); *see also Reno v. Flores*, 507 U.S. 292, 305-06 (1993). Though the Fifth Amendment entitles noncitizens to due process of law in deportation proceedings, "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process." *Demore*, 538 U.S. at 523; *see also Wong Wing v. United States*, 163 U.S. 228, 235 (1896). Instead, the court expects the government to follow its procedures laid out in the law appreciating that Mr. Morones-Ramirez has been detained pursuant to a warrant issued by an immigration official under § 1226. It is for the Attorney General, through the individuals delegated her authority, to decide whether release is warranted under the circumstances. *See Bolante v. Keisler*, 506 F.3d 618, 620-21 (7th Cir. 2007) (federal court's inherent authority to release individuals seeking habeas corpus relief is curtailed by statutory structure that applies in immigration cases).

Some courts, including some in this circuit, have ordered a bond hearing. Perhaps in these other matters the petitioner explained why a custody redetermination, under procedures that already exist, would not be fair and sufficient process, or perhaps the petitioner gave some other salient reason, or perhaps the parties merely treated a customary bond hearing as shorthand for a custody redetermination. But the statute doesn't require a hearing. The regulations (insofar as the parties have provided them to the court this time) don't require it. Even the rules that govern redetermination proceedings before the

8

immigration judge seem to afford that judge some ability to decide whether a hearing is necessary, though a custody redetermination must be given.

So, though the court agrees that detention under § 1226(a) without an opportunity to seek release under the procedures specified in the regulations—what the government has determined to be fair—would be unlawful, *see Accardi*, 347 U.S. at 265, the court leaves it to the Attorney General to follow that process, including to decide whether to release Mr. Morones-Ramirez or to proceed differently. Only if the Attorney General, acting through her designated officials, chooses to do nothing or fails to afford that process governing § 1226(a) proceedings must Mr. Morones-Ramirez be released.[3] *See Wilkinson v. Dotson*, 544 U.S. 74, 87 (2005) (Scalia, J., concurring) ("Conditional writs enable habeas courts to give [authorities] time to replace an invalid judgment with a valid one, and the consequence when they fail to do so is always release.").

Mr. Morones-Ramirez requests that the government be ordered to act within seven days. An immigration judge conducts a custody redetermination already at the earliest possible date, so perhaps there is something prophylactic in this request for a precise timeline. At the same time, nothing in that strikes as too restrictive for a custody

---

[3] Mr. Morones-Ramirez argues that the court must require the government to bear the burden of proving that he should not be released at any forthcoming custody redetermination hearing, whereas under existing procedures, "[t]o secure release, the alien must show that he does not pose a danger to the community and that he is likely to appear for future proceedings." *Johnson*, 594 U.S. at 527; *see also* 8 C.F.R. § 236.1(c)(8) ("[T]he alien must demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding."). His argument is premature because it is unclear how the government intends to proceed, nor will the court interfere in this manner. If he is given a custody redetermination hearing, he may in fact prevail under the existing standard. Without a prior denial on the merits alleged to be erroneous, the court leaves the parties to follow their process under § 1226 accordingly.

redetermination in light of the finding that Mr. Morones-Ramirez falls under § 1226, particularly when he has not been given this process to date based on the mistaken view that he falls under § 1225(b)(2). Even busy federal magistrate judges conduct detention hearings, given their heavy criminal and civil dockets, in less time. And that timeline fits well within other federal habeas corpus decisions.

For these reasons, the court:

(1) DISMISSES Pamela Bondi, Attorney General of the United States; Kristi Noem, Secretary of the United States Department of Homeland Security; Todd M. Lyons, Acting Director of United States Immigration and Customs Enforcement; and Samuel Olson, Interim Director of United States Immigration and Customs Enforcement Chicago Field Office, as respondents;

(2) DENIES the petition [ECF 1], except to FIND that Victor Morones-Ramirez must be classified under 8 U.S.C. § 1226(a) and to CONDITIONALLY ORDER the Warden to release Victor Morones-Ramirez by March 4, 2026, only if he remains detained without a custody redetermination before an immigration judge in accordance with 8 U.S.C. § 1226(a) and corresponding regulations by March 4, 2026, at 5:00 pm ET;

(3) DIRECTS the clerk to email forthwith a copy of this order to the Warden of the Miami Correctional Facility at the Indiana Department of Correction to secure compliance with this order, noting it will otherwise be electronically provided to the United States Attorney's Office for the Northern District of Indiana; and,

(4) ORDERS the Warden to file proof of compliance with this order, either to indicate that the custody redetermination process has been completed or the petitioner released, by March 5, 2026.

SO ORDERED.

February 25, 2026

*s/ Damon R. Leichty*
Judge, United States District Court